124 F.3d 206
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
U.S. PAPER PRODUCTS, INCORPORATED, an Illinois corporation
and William Perez, an individual, Plaintiffs-Appellants,
v.
ABBOTT LABORATORIES, an Illinois corporation and W. Drew
Schramm, an individual, Defendants-Appellees.
 No. 96-3817.
 United States Court of Appeals, Seventh Circuit.
 Argued May 23, 1997
Decided June 24, 1997.
 
 Before BAUER, CUDAHY, and FLAUM, Circuit Judges.
 
 ORDER
 Marovich
 
 1
 Plaintiff U.S. Paper Products, Inc. ("U.S.Paper"), an Illinois corporation whose sole shareholder is Plaintiff William J. Perez, brought a federal civil rights action and supplemental state law counts against Defendants Abbott Laboratories and W. Drew Schramm, Abbott's Manager of Purchasing. The original complaint alleged nationality discrimination (Perez is Hispanic) and retaliation, in violation of 42 U.S.C. § 1981, and state law causes of action for breach of contract, promissory estoppel, misrepresentation, tortious interference with business relationship and intentional infliction of emotional distress.[1] During their business relationship, U.S. Paper sold office and computer supplies to Abbott to the tune of more than a million dollars a year. The claims in issue basically arose out of U.S. Paper and Perez's belief that Abbott breached certain commitments it made to U.S. Paper which would increase the amount of business conducted between U.S. Paper and Abbott.
 
 
 2
 On May 2, 1996,[2] Plaintiffs' attorneys filed a motion for leave to withdraw as counsel. The district court heard argument on the motion on May 7 and granted the motion on May 30. The court set July 1 as the deadline for the completion of the depositions of Perez and Abbott's accountant, August 1 as the deadline for the final pretrial order, and August 19 as the date of trial. As to the firmness of the trial date, the district court stated:
 
 
 3
 And let me make myself abundantly clear about something else, since people have a way of moaning about this, too. I give you the opportunity to help select whatever trial date you want. That's my courtesy and consideration to you. But once it is picked, don't come asking me for a different date, because it will be like looking over my shoulder to the west to Mt. Rushmore. And just like those faces are chiseled in stone, so is this trial date. There is only one way that it isn't going to go that day, and that is in the rare event that you come to your senses and see what it is that you have at risk here.
 
 
 4
 As to the motion to withdraw as counsel, the district court told Perez and his then-attorneys:
 
 
 5
 I will give you leave to withdraw, and I will set it over for status for ten days. And there's either going to be a new lawyer, or you will here [sic] by yourself, Mr. Perez. Those are your choices. That's what we are doing. Make peace with her [the withdrawing attorney], get a new lawyer or don't get a new lawyer, but we are going straight forward.... Lincoln abolished slavery a long time ago, and I am not going to hold you, Counsel.
 
 
 6
 The district court also expressed its belief that "[t]he last time I knew, there were 50,000 lawyers in Chicago and more of them looking for business rather than trying to get rid of business. You will find somebody."
 
 
 7
 Despite the district judge's optimism, however, Plaintiffs were unable to secure new counsel. On June 3, Plaintiffs were scheduled to depose Abbott's accountant, Mr. Briggs. The morning of June 3, Perez called defense counsel and informed him that the deposition could not go forward because he had not been able to secure replacement counsel. Defense counsel agreed to postpone the deposition until after the status hearing on June 13 in order to allow Perez more time to obtain new counsel.
 
 
 8
 At the June 13 status hearing, Plaintiffs informed the district court that they were having trouble obtaining a new lawyer because of the rigidity of the trial date and the unwillingness of attorneys to become involved in a case with such a rapidly-approaching and unchangeable trial date. To the Plaintiffs' implied request for a continuance to obtain substitute counsel, the district court responded: "It's not going to happen." Defense counsel informed the court that if U.S. Paper did not obtain substitute counsel, Abbott would file a motion to dismiss for want of prosecution. At another status hearing on June 26, the district court again reiterated its unwillingness to change either the trial date or the pretrial order date.
 
 
 9
 On July 15, Defendants filed a motion to dismiss the action for want of prosecution because the only claims remaining in the lawsuit were those of U.S. Paper, and Perez could not represent the corporation as a matter of law. At a July 23 hearing on the motion to dismiss, Perez indicated that financial concerns were resulting in his inability to obtain substitute counsel because he was unable to pay the retainer fee. The district court told the parties that if Perez did not obtain counsel and have depositions scheduled by July 30, he would grant the motion to dismiss. The court then continued the motion for seven days, until July 30. On July 29, the day before the hearing, U.S. Paper filed for Chapter 7 bankruptcy. Appellant John Gierum was appointed trustee of the bankruptcy estate. U.S. Paper was represented by counsel for purposes of the Chapter 7 proceeding.
 
 
 10
 On July 30, despite being informed of the bankruptcy filing, the district court granted Defendant's motion to dismiss with prejudice and ordered that the August 19 trial date be stricken. The court informed Perez that he had a right to appeal from the dismissal in a timely fashion. Perez did not file a direct appeal.
 
 
 11
 On September 27, Perez and U.S. Paper, with the benefit of new counsel, filed a motion to vacate the dismissal pursuant to Rule 60(b)(1) and a motion to dismiss the action without prejudice pursuant to Rule 41(a)(2). On October 1, the district court held a hearing and denied both motions, citing the importance of maintaining the integrity of its calendar and trial dates. On October 16, the district court summarily denied a motion for reconsideration and a Rule 59(e) motion to amend the judgement of the October 1 final order. The motion admitted that Plaintiffs had erred in their original motion when they claimed that they had not been warned by the district court that their case would be dismissed for want of prosecution if they did not obtain substitute counsel. Plaintiffs then argued for a continuance of the trial date, relying on Perez's affidavit, which detailed Perez's attempts to obtain substitute counsel. On October 16, the Bankruptcy Trustee made an appearance in the case.
 
 
 12
 On October 24, the district court denied a similar combined Rule 60(b)(1) and Rule 41(a)(2) motion. This time, the motion was brought on behalf of the Bankruptcy Trustee, who argued that he, as the party in interest to the corporation's assets, was entitled to notice before the dismissal of the underlying action for want of prosecution. On July 30, when the district court initially dismissed the action, the court had asked defense counsel whether the bankruptcy filing had any impact on the court's dismissal of the action. Defense counsel told the court that there was no relationship between the bankruptcy and the dismissal. However, in the October 24 motion brought by the Bankruptcy Trustee, the Bankruptcy Trustee indicated that, if he had received prior notice of the impending dismissal, at the very least he immediately would have contested, on behalf of the debtor, the court's failure to make the dismissal without prejudice. The Bankruptcy Trustee also indicated that, if he had a reasonable opportunity to obtain approval of a suitable retainer agreement from the Bankruptcy Court, and if he had a reasonable opportunity to prepare for trial, he would have been willing and able to prosecute the debtor's action. The court denied the Bankruptcy Trustee's motion without a hearing. Plaintiffs appealed from this denial.
 
 
 13
 We certainly appreciate how important it is for the district court to be able to monitor its calendar and manage its docket with order and integrity, both in this case and in other cases. However, we fail to see the necessity for the district judge's pertinacious approach here. If the district judge was going to maintain his unyielding stance on the August 19 trial date, he should not have allowed Plaintiffs' original counsel to withdraw without more definite assurances that Perez would indeed be able to obtain substitute counsel. It is not surprising that Perez was unable to obtain substitute counsel with such an imminent and unchangeable trial date on the horizon. The district court should have either denied Plaintiffs' original counsel's request to withdraw or granted Plaintiffs a long-enough continuance so that a new lawyer could become involved and familiarize herself with the case. The district court's refusal to grant this continuance surely dissuaded other lawyers from becoming involved in the case.
 
 
 14
 We therefore REVERSE and REMAND this case to the district court, with directions to dismiss the present case without prejudice as to both plaintiffs, and to give leave to the Bankruptcy Trustee to refile the cause within the appropriate statutory period.
 
 
 
 [1]
 The second amended complaint was filed on April 3, 1996. It only contained U.S. Paper's claims under 42 U.S.C. § 1981 and state law causes of action for breach of contract, promissory estoppel, and misrepresentation. It did not contain any claims by Perez as an individual
 
 
 [2]
 All of the dates referenced hereinafter refer to the calendar year 1996